# CHARLESTON.

EARL HEDGES, TRUSTEE, *v.* W. E. ECKARD, *et al*

Submitted December 11, 1923.   Decided January 9, 1924.

BANKRUPTCY—*To Set Aside Conveyance by Bankrupt for Fraud of Creditors, it Must Appear That There Were Creditors to be Defrauded.*

> A trustee in bankruptcy in order to set aside a conveyance executed by the bankrupt on the ground that it was in fraud of creditors must show that there were creditors to be defrauded.

Appeal from Circuit Court, Ohio County.

Suit by Earl Hedges, trustee in bankruptcy for F. G. Anderson, against W. E. Eckard and another. From a decree for plaintiff, the named defendant appeals.

*Reversed, and bill dismissed.*

*P. J. McGinley,* for appellant.

*Austin V. Wood,* for appellee.

MEREDITH, PRESIDENT:

At the suit of Earl Hedges, Trustee in bankruptcy for F. G. Anderson, the circuit court of Ohio County set aside a conveyance of real estate, in which Anderson was grantor, and defendant, W. E. Eckard, was grantee. Eckard appeals from that decree.

The case was submitted on bill and answer, and the testimony of Eckard, taken in the bankruptcy proceeding of F. G. Anderson, bankrupt, in the Federal Court; and it was stipulated that the transcript of Eckard's testimony so taken should be considered as an agreed statement of facts in this suit. We need look no further than it, therefore, for our statement of the matters of fact involved.

Defendant, Eckard, the grantee, is the brother-in-law of Anderson, the grantor. Prior to June 29, 1920, Anderson was the owner of an undivided half-interest in certain residence property in the town of Elm Grove, Ohio County. His wife, defendant's sister, was the owner of the other half-interest. On or before the date aforesaid Anderson was arrested in the city of Pittsburgh, Pennsylvania, on the charge of being implicated in the stealing of automobiles in that vicinity. After his arrest, he proposed to defendant that in order to defray the expenses of his trial and to provide for the care of his wife, he should convey to defendant his one-half interest in the Elm Grove property, the grantee agreeing to advance the payment of the above expenses to the extent of $3,000.00, and to assume also half of the obligation of a deed of trust, amounting to $2,300, on the property. Defendant agreed to the proposition and on June 29, 1920, Anderson executed a deed to carry out the arrangement. A copy of the deed does not appear in the record, and we are not informed concerning its terms, except that the grantor, Anderson, granted the property to defendant, and the latter says it was an outright sale with no agreement whatever on his part to reconvey it to the grantor. Although defendant testified that he was not certain as to the date, he was of

opinion that he recorded the deed about June 30th. On August 17th defendant's sister paid Anderson's Pittsburgh attorneys $1,000.00 on account of defendant. This was repaid her by defendant Eckard and was one of a series of payments made by defendant in pursuance of the deed, which extended over several months from July, 1920, and aggregated $3,093.73. These payments covered attorneys' fees, living expenses of Mrs. Anderson, taxes, and certain miscellaneous items of expense incurred in connection with the Anderson trial.

Anderson was convicted of stealing an automobile, and entered a plea of *nolo contendere* as to the other cases. On February 17th, 1921, he was adjudicated a bankrupt. Who his creditors were we do not know, although the suggestion offered by plaintiff's argument is that at least some of them were the owners of the automobiles stolen by Anderson.

Plaintiff in his bill prays that the deed be set aside because it "was wholly without consideration and was given in order to defraud creditors" of Anderson. The court, in awarding the relief prayed for, recited in its decree that the deed "was wholly without consideration and was given in order to defraud the creditors of the said F. G. Anderson of all of which the said defendants had notice."

As to the want of consideration, we think the court was clearly in error. Pursuant to the stipulation that Eckard's testimony is to be taken as an agreed statement of facts, we are bound by his testimony that under the deed he agreed to advance money to the extent of $3,000.00, and to assume one-half of the obligation of the deed of trust, and that he fully complied with that undertaking. The value of the whole property is fixed at about $12,000.00. However, if the conveyance was for the purpose of defrauding creditors of the grantor and the grantee had notice of such purpose, the payment of adequate consideration by the grantee would not be controlling. "If such conveyance be actually fradulent and the intent concurred in by the grantee as well as the grantor, it will be void as to creditors, however valuable may have been the consideration paid by, or secured to, the grantee or beneficiary." *Harden* v. *Wagner,* 22 W. Va. 356.

Acts void as to creditors are the subject of chapter 74 of

our Code. (Barnes' Code, 1923). Section 1 of that chapter provides, among other things, that every conveyance of real estate "given with intent to delay, hinder or defraud creditors, purchasers or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers, or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fradulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

As is manifest from the words of the statute, and as set forth in many decisions, there are two distinct matters to be considered in determining whether a conveyance for valuable consideration is to be set aside as fradulent: first, was it given with intent to delay, hinder and defraud, etc.? second, did the purchaser for valuable consideration have notice of the fraud?

Plaintiff contends that the facts of this case warrant an affirmative answer to both questions. From an analysis of the testimony of Eckard and the pleadings we will ascertain whether that contention is correct. First, was the deed of June 29th given with intent to hinder, delay, or defraud creditors? This question contemplates two objects, the fradulent intent of the grantor, and creditors to be defrauded, two circumstances clearly distinct in fact, but as subjects of proof very much interrelated. As Eckard in his testimony emphatically denies knowledge of any wrongful intent on the part of the grantor when the deed was executed, it is clear enough that any proof of such intent must be inferred from the existence of other circumstances as revealed by the evidence. The most persuasive circumstance to this end would of course be proof of the fact that there were creditors to be defrauded.

An elementary proposition in this connection is that defrauded creditors may be of two kinds, (1) those existing at the date of the conveyance, and (2) those whose claims are created subsequent to the conveyance. A creditor to be defrauded must come within one of these classifications. The principles of law respecting these two classes of creditors vary in several particulars, but one well settled principle relative to subsequent creditors is that as to them the intent

which will in general make a transfer void is an actual intent to defraud, the burden of proving which rests upon the subsequent creditor. Bump, Fraudulent Conveyances, §291. There is no evidence here to the effect that the grantor was actuated by fraudulent motives. All of defendant's testimony is that the sale was outright and that the price was adequate. No claims of subsequent creditors are discussed, and we know nothing of them if there were such.

As to existing creditors the rule is less exacting, so far as proof of the intent is concerned. As to the actual existence of the creditors, however, their existence must be shown by clear proof. A deed must not be set aside as in fraud of creditors unless there were creditors to be defrauded, and that is where plaintiff's case falls on this record. Plaintiff, by his agreement to stand upon defendant's evidence in the bankruptcy proceeding, accepts that evidence as conclusive, and as we have heretofore noted, defendant emphatically denied knowledge that Anderson had any creditors, save perhaps a few small business debts which defendant supposed to have been paid. While he stated that he knew that Anderson dealt in automobiles, he said he "had no doubt as to their ownership."

Not a single creditor of Anderson is named, nor is a single debt as owing by him stated anywhere in the record; it is therefore not shown that by this conveyance any creditor whether existing or subsequent had been defrauded. In the absence of proof of existing creditors, or the existence of or intent to defraud subsequent ones, plaintiff has failed to show that the conveyance was made with intent to delay, hinder or defraud, etc., under the language of sec. 1, ch. 74, of the Code. That being the case, all the evidence as to defendant's notice of claims against Anderson prior to the recording of the deed is immaterial. Both elements, the fraudulent conveyance and the absence of notice must combine to make out a case to set aside a deed where the consideration is adequate. Having failed as to the first, we must hold that the deed is not to be set aside.

The relationship of the grantor to the defendant, and the conviction of the grantor for theft are but circumstances

which would have bearing if the evidence were conflicting or in doubt on material issues.

Our judgment, therefore, is to reverse the decree of the circuit court setting aside the deed, and to dismiss plaintiff's bill.

*Reversed and bill dismissed.*